UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
228E58STR LLC,

              Plaintiff,

       - against -

KOLEKSIYON MOBILYA SAN A.S.,

              Defendant.
------------------------------------X

**MEMORANDUM AND ORDER**

19 Civ. 7795 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff 228E58STR LLC ("plaintiff") brought this action against defendant Koleksiyon Mobilya San A.S. ("defendant") to enforce a guaranty that was executed by the defendant, as guarantor (the "Guaranty"), contemporaneously with a lease for commercial space that had been entered into between plaintiff, as landlord, and a non-party tenant.  Broadly speaking, the parties dispute whether defendant's liability under the Guaranty terminated when the tenant vacated and purported to surrender the premises mid-lease, or whether defendant remains liable to plaintiff under the Guaranty for any amounts owed by the tenant over the unexpired term of the lease.

    Before the Court is plaintiff's motion for summary judgment on the issue of defendant's liability as guarantor.[1]  See ECF No.

---

[1] While plaintiff seeks damages in excess of two million dollars for all sums purportedly owed by the tenant, see Compl. (ECF No. 11) at 17, the parties' briefing, and therefore this ruling, is limited solely to the issue of the existence of defendant's liability under the Guaranty.  See ECF No. 27 at 5 n.3; ECF No. 37 at 13 n.2.

27.  Defendant, which denies any liability under the Guaranty, has cross-moved for summary judgment dismissing the complaint as a matter of law.  See ECF No. 23.  For the reasons discussed herein, plaintiff's motion is granted and defendant's cross-motion is denied.

## I.  Background[2]

On or about April 28, 2015, plaintiff and non-party tenant Koleksiyon USA LLC, which is a corporate entity owned by defendant, entered into a ten-year lease for the commercial space consisting of a portion of the ground floor, the second floor, and the basement of the building located at 228 East 58th Street in Manhattan (the "Lease").[3]  Plaintiff owns the building.  In addition to requiring monthly rent payments,[4] the Lease required

---

[2] The following facts, which are undisputed unless otherwise noted, are drawn from the parties' submissions in support of and in opposition to the instant motions, including: Plaintiff's Local Civil Rule 56.1 Statement (ECF No. 30); the Declaration of Marc A. Landis in Support of Plaintiff's Motion for Summary Judgment and the exhibits annexed thereto (ECF No. 28); the Supplemental Declaration of Marc A. Landis in Support of Plaintiff's Motion for Summary Judgment (ECF No. 36); Defendant's Local Civil Rule 56.1 Statement (ECF No. 22); Plaintiff's Responses to Defendant's Rule 56.1 Statement (ECF No. 35); Defendant's Opposition to Plaintiff's Rule 56.1 Statement (ECF No. 34); and the Declaration of John P. Sheridan in Support of Defendant's Motion for Summary Judgment and the exhibits annexed thereto (ECF No. 25).

[3] The Lease was for the period April 1, 2015 through March 31, 2025.

[4] Specifically, the Lease required the tenant to make advance monthly payments (i.e., payments of "Fixed Rent") on the first day of each calendar month.  The tenant's Fixed Rent payments began at $33,000 and increased annually pursuant to the Fixed Rent schedule annexed as an exhibit to the Lease.  The Lease also required the tenant to make payments "consisting of all sums, costs, expenses, payments and deposits required of Tenant pursuant to the terms of th[e] Lease, including, without limitation, Tax Payments . . . and any other payment as shall become due from and payable by Tenant to Landlord hereunder" (i.e., "Additional Rent").  Lease § 3.01(b).  The Lease further required the tenant to pay a late charge of one thousand five hundred dollars any time Fixed

the tenant to deliver to plaintiff, as security for the tenant's performance of its obligations under the Lease, a letter of credit that would renew automatically throughout the term of the Lease.[5] If for any reason the letter of credit was not renewed within ninety days prior to its expiration or renewal date, the Lease afforded plaintiff "the unconditional right to draw upon the existing Letter of Credit and to hold such sums as security for Tenant's performance under th[e] Lease." Lease § 37.01. The Lease also permitted plaintiff to draw against the letter of credit to the extent necessary to cure any default by the tenant, regardless of the exercise of any other remedy available to plaintiff as a result of such default.

As an additional inducement for plaintiff to enter into the Lease, defendant agreed to assume liability for the tenant's Lease obligations pursuant to the terms set forth in the Guaranty. See Lease § 36.22 ("As a material inducement for Landlord [i.e., plaintiff] to enter into this Lease with Tenant, KOLEKSIYON MOBILYA SAN A.S., as the direct and beneficial owner of Tenant, agrees to execute the Personal Guaranty in the form annexed hereto as Exhibit

---

Rent or Additional Rent was not paid within seven days of becoming due.  Lease § 3.04(b).

[5] Specifically, the tenant was to "deliver a clean, automatically self-renewing, non-expiring, irrevocable and freely transferable letter of credit not less than the greater of (i) $463,980.00 and (ii) fourteen months' Fixed Rent at the then-applicable rate as set forth in [the rent schedule]."  Lease § 37.01.

<u>F</u> and made a part hereof.").[6]  Indeed, the stated purpose of the
Guaranty, which by its terms is "absolute and unconditional," ECF
No. 5-1 at 54, is to:

> assure Landlord (and Landlord's successors and assigns) that
> the payment of all rent and additional rent (including, but
> not limited to, Fixed Rent, Additional Fixed Rent and
> Additional Rent for any and all damages, costs, fees and
> expenses), including, without limitation, Tenant's obligation
> to pay Landlord the unamortized cost of the brokerage
> commissions paid by Landlord in connection with the execution
> of this Lease, plus eight percent (8%) interest per annum,
> shall all be the obligation of the Guarantor if the same is
> not paid by Tenant.  Nothing contained herein or in any such
> instrument shall relieve Tenant of liability to Landlord at
> any time, and any liability of the Guarantor for any claims
> of Landlord arising under the Lease shall survive the
> surrender or termination of the lease.

Guaranty ¶ 2.  To that end, the Guaranty states that defendant, as
guarantor, "personally guarantees to Landlord the payment of all
rent and additional rent payable by the Tenant (as defined below)
under the Lease through the Surrender Date (as defined below)."
Guaranty ¶ 1. While "Tenant" is thereafter defined in the Guaranty
as KOLEKSIYON MOBILYA and any of its permitted successors or
assigns, the Guaranty does not go on to include a definition of
"Surrender Date."[7]

Notwithstanding the Guaranty's omission of a definition of
"Surrender Date," the requirements for an effective surrender of

---

[6] Defendant Koleksiyon Mobilya San A.S. is a business entity organized
under the laws of the foreign state of Turkey.  <u>See</u> ECF No. 34 ¶ 3.

[7] Plaintiff states in its papers that the definition "apparently was
inadvertently omitted during the drafting of the Guaranty." ECF No. 37 at 6.

the premises are set forth in the Lease.  In particular, Section 23.02 of the Lease states, <u>inter alia</u>, that for a surrender of the premises to be valid, it must be in writing and signed by the Landlord.  <u>See</u> Lease § 23.02 ("No act or thing done by Landlord or its agents shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such surrender shall be valid unless in writing and signed by Landlord and each Superior Lessor and Superior Mortgagee whose Superior Lease or Superior Mortgage, as the case may be, provides that no such surrender may be accepted without its consent.").

Several other provisions of the Lease are relevant:

- **Lease termination:**  With respect to the right of plaintiff, as landlord, to terminate the Lease and hold the tenant liable thereunder, the Lease states that "if Tenant shall default in the payment of any Fixed Rent or Additional Rent, and such default shall continue for ten (10) days; or . . . if Tenant shall vacate or abandon the Premises," then "Landlord may give to Tenant a notice of intention to end the term of th[e] Lease at the expiration of five (5) days from the date of the service of such notice of intention, and upon the expiration of said five (5) days this Lease and the term and estate hereby granted, whether or not the term shall theretofore have commenced, shall terminate with the same effect as if that day was the day herein definitively fixed for the end and expiration of this Lease, but Tenant shall remain liable for damages as provided in Article 26."  Lease § 24.02.

- **Damages:**  Article 26.01 of the Lease goes on to describe plaintiff's right to damages upon a Lease termination resulting from the tenant's default(s) of its obligations under the Lease.  Specifically: "[i]f this Lease is terminated under the provisions of Article 24 . . . Tenant shall pay to Landlord as damages, at the election of Landlord, either . . . a sum which at the time of such termination of this Lease . . . represents the then present

> value . . . of (i) the aggregate amount of the Fixed Rent
> and the Additional Rent under Article 5 which would have
> been payable by Tenant . . . for the period commencing with
> such earlier termination of this Lease or the date of any
> such reentry, as the case may be, and ending with the date
> then contemplated as the Expiration Date, over (ii) the
> aggregate rental value of the Premises for the same period,
> or . . . sums equal to the Fixed Rent and the Additional
> Rent . . . which would have been payable by Tenant had this
> Lease not so terminated."

Lease § 26.01.

*          *          *

It is undisputed that tenant vacated the premises on May 24, 2019, and that tenant proffered to plaintiff an "Acknowledgement of Surrender," which plaintiff never signed, on May 28, 2019.  See ECF No. 28-5.[8]  While tenant paid Fixed Rent for the month of May 2019 on May 17, 2019, neither tenant, nor defendant as guarantor, made any further payments to plaintiff.  Indeed, defendant does not dispute that plaintiff was never paid Fixed Rent or Additional

---

[8] Plaintiff maintains that tenant vacated the premises following failed negotiations between plaintiff, tenant and defendant that arose in connection with tenant's failure to deliver to plaintiff a letter of credit that was compliant with the requirements set forth in Section 37.01 of the Lease. Specifically, plaintiff contends that after several months of failed efforts by the plaintiff to obtain from the tenant a properly conforming letter of credit, tenant and defendant sought to negotiate with plaintiff certain favorable modifications to the Lease and Guaranty. According to plaintiff, it was only when it became apparent that no agreement would be reached regarding the requested modifications that tenant advised plaintiff that it would not replace the letter of credit, as required under the Lease, and that tenant would abandon the premises.

While defendant denies (without explanation) this general recounting of the pre-litigation negotiations, see ECF No. 34 ¶ 20, defendant admits (1) that plaintiff and tenant did not reach any agreement regarding tenant and defendant's requested modifications; (2) that there have been no agreements modifying either the Lease or the Guaranty; and (3) that tenant failed to issue a conforming replacement letter of credit as required under the Lease.

Rent for the months of June, July or August 2019.[9]  Nor is there any dispute that plaintiff, who continued to treat the Lease and the tenant's obligations thereunder as fully in effect, sent the tenant a notice of intention to terminate the lease and a notice of lease termination, pursuant to Section 24.02 of the Lease, on August 5, 2019 and August 13, 2019, respectively.  The legal ramifications of the foregoing facts are, however, strongly disputed.

Whereas plaintiff contends that the tenant impermissibly abandoned the premises without plaintiff's consent and subsequently defaulted on its payment obligations, thereby breaching several provisions of the Lease, defendant insists that the tenant properly surrendered the premises (as far as the Guaranty is concerned) when the tenant proffered its "Acknowledgement of Surrender" to plaintiff on May 28, 2019.[10]  Further, whereas plaintiff maintains that defendant, as guarantor, is liable not only for the Additional Rent that was owed by the tenant prior to vacating the premises but also for all additional rent payments that would have come due over the unexpired term of

---

[9] It is implicit in plaintiff's briefing and in the express terms of the Lease that tenant's failure to pay Fixed Rent and Additional Rent for the months of June, July and August 2019 constituted a default of tenant's payment obligations under the Lease.  Defendant does not explicitly dispute this point.

[10] The "Acknowledgement of Surrender," which is attached as an exhibit to the Sheridan Declaration, states in relevant part that "[t]he Tenant hereby surrenders the Lease and its interest in the Premises.  The Surrender Date shall be the date hereof."  ECF No. 28-5 at 2.

the Lease, defendant insists that the tenant paid plaintiff all amounts that were due and owing through May 2019 and that, in light of the tenant's purportedly valid surrender of the premises, defendant has no liability under the Guaranty.[11]

As discussed in greater detail _infra_, the Court concludes as a matter of law that there was never an effective surrender of the premises by the tenant and thus that defendant's liability under the Guaranty did not, as defendant contends, terminate when the tenant vacated and purported to "surrender" the premises. Plaintiff's motion for summary judgment as to the existence of defendant's liability under the Guaranty accordingly is granted and defendant's cross-motion is denied.

## II.  **Procedural History**

Plaintiff filed this action on August 27, 2019, seeking: (1) a declaration that the tenant breached its obligations under the Lease and that, as a result of the tenant's breach, defendant is liable to plaintiff under the Guaranty; and (2) judgment against defendant for payment of Fixed Rent, Additional Rent, and all late

---

[11]  While the amount of damages is not presently at issue, plaintiff maintains that tenant's May 17, 2019 Fixed Rent payment was late, as payment of Fixed Rent was required on the first day of each calendar month, and that a late fee accordingly accrued prior to the date on which tenant vacated the premises that tenant never paid.  _See_ Lease §§ 3.01(b), 3.04(b).  Plaintiff further contends that tenant's (and therefore defendant's) liability for all Fixed Rent and Additional Rent due over the unexpired term of the Lease accrued upon plaintiff's termination of the Lease.

charges and fees that purportedly are due to plaintiff over the unexpired lease term.  See Compl. at 17.

On September 18, 2019, defendant filed a letter setting forth the basis for its anticipated motion to dismiss.  See ECF No. 13. After plaintiff filed a pre-motion letter in opposition to defendant's proposed motion, see ECF No. 14, a teleconference was held during which the parties agreed that their competing interpretations of the Guaranty could be resolved as a matter of law through summary judgment briefing.  The instant briefing followed.  Oral argument on the parties' cross-motions was held on July 9, 2020.[12]

## III. **Legal Standard**

### A.    **Motion for Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' when it 'might affect the outcome of the suit under governing law.'"  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)).  A factual dispute is genuine if a reasonable factfinder could decide in the nonmoving party's favor.  Id.

---

[12] Oral argument was held telephonically in light of the ongoing COVID-19 pandemic.

At summary judgment, a court must resolve all ambiguities and draw all justifiable inferences in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party must "make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986). If it does so, then there is no issue for trial unless the party opposing summary judgment presents "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "The same standard . . . applies when," as here, "the court is faced with cross-motions for summary judgment. Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration." Bell v. Pham, No. 09 CIV. 1699 (PAC), 2011 WL 1142857, at *2 (S.D.N.Y. Mar. 24, 2011) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

## B.   Principles of Contract Interpretation[13]

"Under New York law . . . the initial question for the court on a motion for summary judgment with respect to a contract claim is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" Law Debenture Tr. Co. of New

---

[13] Both the Lease and the Guaranty contain New York choice of law provisions, see Lease § 36.12, Guaranty ¶ 8, and the parties do not dispute that New York substantive law is controlling. See ECF No. 23 at 5 n.2.

York v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) (quoting Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002)).  "The threshold question of ambiguity is a matter of law for the court to decide."  FCCD Ltd. v. State St. Bank & Tr. Co., No. 10 CIV. 1632 DLC, 2011 WL 519228, at *4 (S.D.N.Y. Feb. 15, 2011).  "An ambiguity exists where the terms of the contract 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  Maverick Tube Corp., 595 F.3d at 466 (quoting Int'l Multifoods, 309 F.3d at 83).

"Where the parties dispute the meaning of particular contract clauses, the task of the court 'is to determine whether such clauses are ambiguous when read in the context of the entire agreement.'"  Maverick Tube Corp., 595 F.3d at 467 (quoting Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993)).  Moreover, "agreements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one."  Perlbinder v. Bd. of Managers of 411 E. 53rd St. Condo., 886 N.Y.S.2d 378, 381 (N.Y. App. Div. 2009) (quoting Flemington Nat. Bank & Tr. Co. v. Domler Leasing Corp., 410 N.Y.S.2d 75, 77 (N.Y. App. Div. 1978)).

**IV.**  **Discussion**[14]

Defendant does not deny having previously been bound by the Guaranty. However, defendant maintains that it is no longer liable thereunder because the Guaranty at issue is a "good guy" guaranty pursuant to which "[a]ny liability on the part of the guarantor is extinguished once a tenant surrenders the premises as long as the tenant has paid the landlord everything owed through the date of termination." ECF No. 23 at 5. See also ECF No. 23 at 10 ("This type of guaranty, which limits a guarantor's liability to the obligations of a tenant up to and until the date the premises is vacated, is known as a 'Good Guy Guaranty'".). Thus, according to defendant, the tenant's "surrender" -- which purportedly took place on May 28, 2019 when the tenant, after having vacated the premises, provided plaintiff its unilateral "Acknowledgement of Surrender" -- extinguished defendant's obligations as to all payments other than any amounts that were owed by the tenant prior to the purported surrender. Because defendant's position is that tenant paid plaintiff all amounts that were due and owed through May 28, 2019, defendant insists that it has no continuing liability under the Guaranty.[15] Plaintiff, for its part, rejects the argument

---

[14] The parties' motions are mirror images insofar as they set forth competing interpretations of what is required for the tenant to properly "surrender" the premises. Because the analyses are interwoven, the cross-motions are considered together herein.

[15] It is not clear to the Court that defendant can credibly dispute plaintiff's contention that a late fee accrued when tenant paid Fixed Rent for the month of May 2019 on May 17, 2019. To be sure, the Lease expressly required

that the tenant properly "surrendered" the premises on May 28, 2019 (or on any other date), given that the requirements for an effective surrender as set forth in the Lease -- namely, the consent of the landlord as evidenced through a signed agreement, see Lease § 23.02 -- were never satisfied. Plaintiff likewise rejects defendant's insistence that the Guaranty at issue was nothing more than a "good guy" guaranty and that the tenant had not yet accrued any liability when it vacated the premises.

The parties' arguments turn principally on competing approaches to interpreting the term "Surrender Date" in the Guaranty. See Guaranty ¶ 1 (stating that defendant, as guarantor, "personally guarantees to Landlord the payment of all rent and additional rent payable by the Tenant (as defined below) under the Lease *through the Surrender Date* (as defined below)") (emphasis added). As noted previously, "Surrender Date" is not explicitly

---

the tenant to make Fixed Rent payments on the first day of each calendar month, see Lease § 3.01(b), and defendant does not dispute that tenant tendered its Fixed Rent payment for May 2019 on May 17, 2019 and did not pay the late fee required by Section 3.04(b) of the Lease. Nevertheless, because defendant's argument that it no longer has any liability under the Guaranty is dependent upon tenant having paid the landlord all amounts owed through the date of the purported surrender, see ECF No. 23 at 5, defendant presumably was left with no choice but to dispute the existence of any unpaid charges on the date of the purported surrender.

    This dispute is ultimately immaterial, and thus does not preclude summary judgment in favor of plaintiff, because even if the tenant had in fact paid all money owed to plaintiff through May 2019, as defendant contends, there still could not have been a valid "surrender" given that (as will be explained infra) plaintiff never executed a written agreement consenting to any such surrender. Absent such consent, defendant could not have been relieved from liability under the Guaranty even if there were no outstanding payments at the time of the purported surrender.

defined in the Guaranty, notwithstanding the reference to that term being "defined below."   Id.

In the absence of any such definition,[16] defendant urges the Court to limit its interpretation of "Surrender Date" solely to the terms of the Guaranty, reasoning that "[a]bsent any limiting definition in the four corners of the Guaranty, 'Surrender Date' retains its common meaning."   ECF No. 23 at 11.   Based on the purported "common meaning" of "surrender,"[17] defendant insists that "the Tenant 'surrendered' the Premises when it vacated the Premises, tendered its written acknowledged surrender and delivered the keys to the Landlord."   ECF No. 23 at 11.   According to defendant, the "Surrender Date," so defined, was no later than May 28, 2019.   ECF No. 23 at 12.   Because the tenant purportedly had not accrued any liability as of that date, defendant insists that it has no liability under the Guaranty and thus that plaintiff's complaint should be dismissed as a matter of law. Plaintiff counters that because the Guaranty was signed

---

[16] Notwithstanding the absence of an express definition of "Surrender Date" within the four corners of the Guaranty, both parties argue that the Guaranty is unambiguous and subject to only one reasonable interpretation. Indeed, as this Court previously has explained, the fact that a contract is "not a portrait of clarity" does not preclude a finding that the contract is unambiguous as a matter of law.   Carolina First Bank v. Banque Paribas, No. 99 CIV. 9002 (NRB), 2000 WL 1597845, at *6 (S.D.N.Y. Oct. 26, 2000).

[17] Defendant cites a Black's Law Dictionary definition that defines "surrender" as "[a] tenant's relinquishment of possession before the lease has expired, allowing the landlord to take possession and treat the lease as terminated."   See ECF No. 23 at 12.   However, the cited definition does not require the landlord to waive rent obligations.

contemporaneously with and was incorporated into the Lease as an exhibit, the "Surrender Date" is to be determined not by reference to any "common meaning" or dictionary definition of that term but rather by reference to the Lease.  Because the Lease unambiguously requires the plaintiff's written consent for any surrender of the premises to be valid, see Lease § 23.02, and because there is no dispute that plaintiff never signed an agreement manifesting its consent to the tenant's purported surrender, defendant's liability under the Guaranty never terminated.   Plaintiff accordingly maintains that it is entitled to summary judgment as to defendant's liability under the Guaranty.

The   Court   agrees   in   substantial   part   with   plaintiff's analysis.  While defendant notes correctly that "the Guaranty does not reference the Lease for a definition, nor does the Guaranty state anywhere that terms undefined in the Lease should have the same meaning as those found in the Lease," ECF No. 23 at 11, several factors persuade the Court that the Guaranty and the Lease are   interrelated   agreements   and   that   the   Guaranty   is   properly interpreted in relation to the Lease rather than in isolation. First, the Lease expressly states that the Guaranty "is annexed hereto as Exhibit F and *made a part hereof*," Lease § 36.22 (emphasis added), and that the "Lease and Exhibits hereto contain

the entire agreement between the parties," Lease § 36.02.[18] Moreover, the various references in the Guaranty to the Lease and the obligations of the tenant and guarantor thereunder all but compel the conclusion that the logical source for determining the occurrence of a valid "surrender" of the premises by the tenant is the Lease itself.  See, e.g., Guaranty ¶ 1 (defendant "personally guarantees to Landlord the payment of all rent and additional rent payable by the Tenant . . . under the Lease); Guaranty ¶ 2 ("Nothing contained herein or in any such instrument shall relieve Tenant of liability to Landlord at any time, and any liability of the Guarantor for *any claims of Landlord arising under the Lease* shall survive the surrender or termination of the Lease") (emphasis added).  These provisions, and others not replicated here, plainly undermine defendant's assertion that "[t]he Court should not look to the Lease or any other extrinsic evidence to ascertain the definition because the Guaranty fails to reference the Lease." ECF No. 23 at 11.[19]

---

[18] When counsel for the defendant was asked at oral argument why, in the defendant's view, it makes more sense to define "Surrender Date" based upon the definition in Black's Law Dictionary rather than by reference to the Lease, defense counsel replied that "the guarantor is not a party to the Lease."  ECF No. 40 at 8.  It is well settled, however, that "[u]nder New York law, 'all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they . . . were not all between the same parties.'"  TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 89 (2d Cir. 2005) (quoting This Is Me, Inc. v. Taylor, 157 F.3d 139, 143 (2d Cir. 1998)).

[19] Citing VW Credit, Inc. v. Big Apple Volkswagen, LLC, No. 11 CIV. 1950 PAE, 2012 WL 919386, at *4 (S.D.N.Y. Mar. 15, 2012) ("[u]nder New York law, '[a] guaranty must be construed in the strictest manner'") (quoting Davimos v. Halle, 35 A.D.3d 270, 272 (N.Y. App. Div. 2006)), defendant argues that

The Court is likewise unpersuaded by defendant's argument that the provision in the first paragraph of the Guaranty, which states that "[n]othing contained herein shall alter the assignment and subletting provisions of the Lease or modify the Lease in any other manner," Guaranty ¶ 1, "confirms that paragraph 1 [of the Guaranty] does not utilize the same definitions as those found in the lease," ECF No. 23 at 11.  For ease of reference, the relevant provision is replicated below:

> As used herein, the 'Tenant' means and includes KOLEKSIYON USA LLC and any and all of its permitted successors or assigns, if there are any, and any party claiming rights in or to the Premises to the Lease under or through Tenant, or any of its successors or assigns at any time during or after the term of the Lease.  Nothing contained herein shall alter the assignment and subletting provisions of the Lease or modify the Lease in any other manner.

Guaranty ¶ 1.  According to defendant, the "in any other manner" language indicates that the first paragraph of the Guaranty "altered the terms of the Lease," ECF No. 33 at 8, and thereby undercuts plaintiff's contention that the terms in the Guaranty should be defined in the same manner as in the Lease.  In the

---

plaintiff's interpretation violates the principle that a guaranty should be interpreted "in favor of the guarantor, in order to ensure that any liability does not extend beyond its plain terms."  ECF No. 23 at 5.  The Lease expressly states, however, that it "shall be construed without regard to any presumption or other rule requiring construction against the party causing this Lease to be drafted."  Lease § 36.12.  Even if the Lease did not contain such a provision, the Second Circuit has recognized that although "guarantee agreements are construed *strictissimi juris* under New York," such principle is applied "only 'after the meaning of the contract of guarantee has been determined according to the ordinary principles of contract construction.'"  Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31, 34 (2d Cir. 1999) (quoting Banco Portugues do Atlantico v. Asland, S.A., 745 F. Supp. 962, 967 (S.D.N.Y. 1990)).

Court's assessment, however, the proper interpretation of that provision lends itself to precisely the opposite conclusion -- namely, that neither the assignment nor the subletting provisions of the Lease, *nor any other provision of the Lease* (i.e., including any provision pertaining to the surrender of the premises), is to be modified by the terms of the Guaranty.  So understood, the provision serves only to support plaintiff's view that the Guaranty should be interpreted as having adopted the same requirements for "surrender" as set forth in the Lease.

While defendant is quick to point out that "[o]rdinarily, a guaranty, even if contemporaneously executed, is considered a distinct obligation" and thus that "the guaranty is not read together with the contract it indemnifies," Bank of Tokyo-Mitsubishi, Ltd., New York Branch v. Kvaerner a.s., 671 N.Y.S.2d 905, 909 (N.Y. App. Div. 1998) (quoting Ripley v. Int'l Rys. of Cent. Am., 171 N.E.2d 443, 446 (N.Y. 1960)), defendant omits the essential caveat that the guaranty and the indemnified contract are to be interpreted as separate agreements "*unless the history and subject matter shows them to be unified.*" Id. (emphasis added).[20]  Here, because the Lease states in no uncertain terms that the Guaranty and the Lease are part of a

_____

[20] "Under New York law, a guarantee is presumed to be a separate obligation (though not conclusively), and the determination of the issue is normally a question of law for the court."  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Robert Christopher Assocs., 691 N.Y.S.2d 35, 40 (N.Y. App. Div. 1999).

single agreement, see Lease §§ 36.22, 36.02, and because the plain language of the Guaranty clearly evinces an intent for the guarantor to be liable under the Guaranty for tenant's payment and performance obligations *arising under the Lease*, the Court is amply persuaded that the term "Surrender Date" is properly interpreted in reference to the Lease.  As previously noted, the relevant provision of the Lease states that:

> No act or thing done by Landlord or its agents shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such surrender shall be valid *unless in writing and signed by Landlord* and each Superior Lessor and Superior Mortgage whose Superior Lease or Superior Mortgage, as the case may be, provides that no such surrender may be accepted without its consent.

Lease § 23.02 (emphasis added).  Because there is no dispute that plaintiff never signed an agreement manifesting its acceptance of the tenant's surrender, the Court concludes as a matter of law that the tenant never properly "surrendered" the premises.[21]

---

[21] At oral argument, counsel for the defendant attempted to distinguish between a "surrender of the premises" and a "surrender of the lease," arguing, in relevant part, that the Court was "confusing two difference concepts.  One is the surrender of the premises, the other being a surrender of the lease, which we all agree that the landlord has to accept before it can be a fait accompli." ECF No. 40 at 11.  The Lease explicitly states, however, that "[n]o act or thing done by Landlord or its agents shall be deemed an acceptance of a *surrender of the Premises*, and no agreement to accept such surrender shall be valid *unless in writing and signed by Landlord.*"  Lease § 23.02 (emphasis added).  The fact that the Lease expressly requires the landlord to accept a "surrender of the premises" (i.e., as opposed to a surrender of the Lease) is fatal to the defendant's argument regarding that purported distinction.

Defendant's liability under the Guaranty, which extends through the "Surrender Date," accordingly has not terminated.[22]

It bears noting that this interpretation -- i.e., that the Guarantor's liability does not terminate upon a unilateral decision by the tenant to vacate or surrender the premises but rather requires the landlord's express consent -- accords not only with the terms of the underlying agreements but also with common sense.  Indeed, it is far from clear that the Guaranty, if it were to be interpreted in the manner defendant advocates, would have *any* practical or commercially sensible purpose, since it would do nothing to protect the landlord from the risk of the tenant abandoning the premises at any point prior to the expiration of the lease term.  See UMB Bank, Nat'l Ass'n v. Airplanes Ltd., 260 F. Supp. 3d 384, 393 (S.D.N.Y. 2017) ("Courts must reject interpretations of agreement provisions that are commercially unreasonable or illogical.").  As the Court noted at oral argument, the amounts that the Guaranty would cover under defendant's preferred interpretation (e.g., any amounts owed and

---

[22] In an attempt to further support the argument that a valid surrender of the premises never occurred, plaintiff cites a 1948 case from the Municipal Court of Syracuse for the purportedly "long-standing legal principle that a surrender of a lease requires not only an abandonment of the premises by a tenant, but also an acceptance of the abandonment by the landlord." ECF No. 27 at 15.  See Schine-Oswego Corp. v. Trovato, 76 N.Y.S.2d 639 (N.Y. Mun. Ct. 1948) ("A surrender by operation of law requires not only an abandonment of the premises by the tenant, but an acceptance thereof by the landlord as a surrender.")  Fortunately for plaintiff given the apparent dearth of case law on point, the Court need not be persuaded that there exists a common law definition of "surrender" in order to conclude as a matter of law that a valid surrender of the premises never took place.

unpaid prior to the tenant vacating the premises), would in most instances be covered by the amount available to the landlord upon drawing down on the tenant's letter of credit, rendering the limited protections afforded by the Guaranty largely superfluous. More broadly, defendant's interpretation would transform the ten-year lease into one that more closely resembles a month to month tenancy.

The parties' remaining arguments are directed to the issue of whether the Guaranty should be characterized as a so-called "good guy" guaranty. While defendant goes to great lengths to persuade the Court that the Guaranty is in fact what is known as a limited, "good-guy" guaranty pursuant to which defendant was responsible for tenant's obligations only through the date tenant vacated the premises, see LF E. 21 Prop. Co., LLC v. Moini, 8 N.Y.S.3d 103, 103 (N.Y. App. Div. 2015) (explaining that, "[u]nder the good guy guaranty, [the guarantor] was responsible only for [the tenant's] obligations up to and until the date it vacated the premises"), the argument ultimately is not dispositive to the outcome of this ruling. Even assuming, arguendo, that the Guaranty is a so-called "good guy" guaranty and that defendant's liability under the Guaranty accordingly was limited, as defendant maintains, to the period prior to the tenant's surrender of the premises, see Russo v. Heller, 915 N.Y.S.2d 268, 269-70 (N.Y. App. Div. 2011) ("'Good Guy' guaranties are commonly understood to apply to

obligations which accrue prior to the surrender of the lease premises"), the Court's prior analysis makes clear that no valid surrender ever occurred.  In other words, under the terms of the relevant agreements, a necessary prerequisite to the termination of the guarantor's liability is the occurrence of a valid surrender, and -- regardless of whether the Guaranty is properly characterized as a so-called "good guy" guarantee -- defendant's liability never terminated because such a surrender never took place.[23]

In short, because the landlord's consent is a condition precedent to a valid surrender of the premises and thus to the termination of defendant's liability under the Guaranty, and because the tenant did not obtain that consent in the manner required by Article 23 of the Lease, defendant continues to remain liable to plaintiff under the Guaranty.  The scope of defendant's liability and the quantum of damages owed, including any amounts

---

[23] While the Court need not resolve whether the Guaranty at issue is a "good guy" guaranty in order to rule as a matter of the law on the parties' cross-motions, it bears noting that in several of the cases cited by defendant involving so-called "good guy" guaranties, the court explicitly referenced the existence of a "good guy" clause in the relevant guaranties that expressly limited the guarantor's liability.  In L & B 57th St., Inc. v. E.M. Blanchard, Inc., for example, the Second Circuit quoted the following provision from the good guy guaranty at issue:

> Notwithstanding anything herein to the contrary, Guarantor's obligations herein shall only be applicable with respect to period [sic] prior to such time as Owner obtains vacant, unencumbered possession of the Demised Premises, free and clear of all tenants, subtenants and occupants.

143 F.3d 88, 90 (2d Cir. 1998).  It suffices for present purposes to note that the Guaranty at issue here, which by its terms is "absolute and unconditional," ECF No. 5-1 at 54, does not contain similarly limiting language.

in mitigation of plaintiff's damages resulting from, _inter_ _alia_, the lease having been relet,[24] is reserved for a future proceeding.

## V.   Conclusion

In light of the foregoing, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.   The parties are directed to confer and to submit for the Court's review, within twenty-one (21) days of this ruling, a proposal for future proceedings on damages.   The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 20 and 26.

**SO ORDERED.**

Dated:   New York, New York
         July 23, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[24]  Article 26 of the Lease states that if the landlord relets the premises, "Landlord shall credit Tenant with the net rents received by Landlord from such reletting."   Lease § 26.01.